# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NOEMI VALDIVIA,

    Plaintiff,

v.

TOWNSHIP HIGH SCHOOL DISTRICT 214,

    Defendant.

**JURY TRIAL DEMANDED**

## COMPLAINT AT LAW

Plaintiff, Noemi Valdivia ("Valdivia" or "Plaintiff"), by and through her attorneys, Caffarelli & Associates Ltd., for her First Amended Complaint at Law against Defendant Township High School District 214 ("Defendant" or "District 214"), states as follows:

### NATURE OF ACTION

1. This is a single-plaintiff action for damages and injunctive relief against Defendant for its unlawful interference with Plaintiff's rights in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA").

### JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiff's FMLA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617

3. The unlawful employment practices described herein were committed at Defendant's Wheeling High School in Wheeling, Cook County, Illinois. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

### PARTIES

4. Plaintiff Noemi Valdivia resides in Huntley, Illinois.

5. Plaintiff worked for Defendant at its Elk Grove High School from May 2010 through June 2016 and at its Wheeling High School from June 2016 through August 2016.

6. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 2611(3)(A).

7. Defendant Township High School District 214 is a public Illinois school district. It operates eleven (11) schools throughout the Chicago suburbs. The District's principal office is located in Arlington Heights, Cook County, Illinois.

8. At all relevant times, Defendant was Plaintiff's "employer" within the meaning of 29 U.S.C. § 2611(4)(A).

9. At all relevant times, the District employed more than 50 employees within 75 miles of its Elk Grove High School and Wheeling High School.

## FACTUAL ALLEGATIONS

10. Valdivia began working for Defendant at its Elk Grove High School as a Secretary to the Principal for Instruction in May 2010.

11. Throughout her employment, Valdivia performed her job satisfactorily.

12. Beginning in July 2016 and continuing into August 2016, Valdivia began crying regularly and uncontrollably at work. She sought out her supervisor, Principal Angela Sisi ("Sisi"), on several occasions while crying uncontrollably and told Sisi that she was unsure if she could continue working. Valdivia also explained to Sisi that she was overwhelmed and afraid.

13. In July and/or August 2016, Valdivia asked Sisi to place her in a "ten-month" position, which would have provided her two months off per school year.

14. In August 2016, Valdivia called Ruby Aleman ("Aleman"), Counselor, and David Maya ("Maya"), Latino Outreach Family Coordinator while crying uncontrollably and explained

2

to them, as she had to Sisi, that she did not know what to do and was not sure whether she was able to continue working for the District.

15. In response to Valdivia's various concerns regarding her ability to work while in obvious distress, Sisi, Aleman and Maya simply told her she needed to decide to between continuing her employment and resigning.

16. Specifically on August 3, 2016, Valdivia again approached Sisi while crying uncontrollably and explained that she not know what to do, that she was confused, and that she was overwhelmed. In response, Sisi told Valdivia that she needed to decide if she wanted to continue working so that Sisi could post Valdivia's position if she needed to be replaced.

17. On August 4, 2016, Sisi texted Valdivia again asking what Valdivia had decided to do about her job.

18. Also on August 4, 2016, Valdivia and Sisi further discussed Valdivia's potential resignation. At that time Sisi asked Valdivia what the deciding factor was that had led her to resign. Valdivia told Sisi that it was "due to medical reasons" and that she felt overwhelmed by everything.

19. Sisi then repeatedly requested a written letter of resignation from Valdivia, which Valdivia was hesitant to provide. On August 4, 2016, at Sisi's urging, Valdivia tendered a letter of resignation to take effect August 11, 2016.

20. In light of Valdivia's mental state and the pressure the District placed upon her to decide whether to continue working, Valdivia informed Sisi that she had decided to "stay closer to home."

21. Unaware of any alternatives and unable to continue working at the time, Valdivia tendered a written letter of resignation on or about August 4, 2016.

22. Defendant posted a job vacancy seeking to fill Valdivia's position on August 4, 2016.

23. On August 9, 2016, Valdivia went to Sisi's home and told Sisi she wanted to rescind her resignation.

24. Sisi spoke with Brian Lichtenberger, Employee Relations Supervisor, and told him that Valdivia wished to rescind her resignation.

25. Shortly thereafter Sisi told Valdivia that she (Sisi) had already decided who would replace Valdivia. Sisi refused to allow Valdivia to continue working.

26. Defendant's school board accepted Valdivia's resignation on August 11, 2016.

27. From August 23 until August 27, 2016, Valdivia was hospitalized and diagnosed with depression, anxiety disorder, panic disorder, and insomnia.

28. Valdivia had never previously been diagnosed with the conditions listed above.

29. In July and August 2016, Defendant knew or should have known that Valdivia was suffering from a medical condition that made her unable to perform her job.

30. Defendant failed to advise Valdivia of her right or eligibility to take leave pursuant to the FMLA.

31. After receiving treatment for her serious health conditions, Valdivia's doctor released her to work a secretarial job at a school.

32. In the twelve (12) months preceding July 2016, Valdivia worked more than 1,250 hours for Defendant.

33. But for Defendant's failure to provide Valdivia with notice of her right to take leave pursuant to the FMLA, Valdivia would not have been forced to resign her position at Wheeling High School.

34. Contemporaneous with the filing of this Complaint, Valdivia has also filed a Charge of Discrimination at the Equal Employment Opportunity Commission ("EEOC"). That Charge alleges that Defendant's employees regularly made derogatory statements about the District's Hispanic students and their families; that despite Valdivia's complaints, the District failed to take appropriate action to prevent these comments from continuing, and that as a result Valdivia was subjected to a hostile work environment based upon her race, Hispanic, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

35. Valdivia intends to amend this Complaint to include her claim under Title VII after the EEOC issues her a "right to sue" letter.

## COUNT I
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT - INTERFERENCE

36. Plaintiff restates and incorporates each of the preceding paragraphs as though fully set forth herein.

37. The matters set forth in this Count arise from Defendant's violation of the FMLA, 29 U.S.C. § 2601, *et seq.*

38. Defendant interfered with Plaintiff's rights under the FMLA by failing to provide her with notice or information regarding her right to take job-protected leave pursuant to the FMLA prior to her resignation.

39. But for Defendant's failure to provide Valdivia with the appropriate notice required under the FMLA, Valdivia would have continued working for the District.

40. Defendant's violation of the FMLA have caused Valdivia to incur damages, including but not limited to loss of income, following her resignation.

WHEREFORE, Plaintiff Noemi Valdivia respectfully requests that this Court enter an order as follows:

A. Declaring that the acts and practices by Defendant, as described herein, constitute a violation of the FMLA;

B. Enjoining and permanently restraining these violations of the FMLA;

C. Awarding Plaintiff back wages and lost benefits due to Defendant's violations of the FMLA;

D. Awarding Plaintiff reinstatement or front pay in the alternative;

E. Awarding Plaintiff liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);

F. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in connection with the instant action; and

G. Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

Dated: November 4, 2016                     Respectfully submitted,

Alejandro Caffarelli                        NOEMI VALDIVIA
Madeline K. Engel
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300             By: /s/ *Alejandro Caffarelli*
Chicago, Illinois 60604                          Attorney for Plaintiff
Tel. (312) 763-6880