IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOEMI VALDIVIA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOWNSHIP HIGH SCHOOL )<br>DISTRICT 214, )<br>)<br>Defendant. ) | No. 16 C 10333<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Noemi Valdivia, has filed a two-count First Amended Complaint ("complaint") against defendant Township High School District 214 ("District 214") seeking damages and injunctive relief on the grounds that defendant discriminated against her on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and interfered with her right to take job-protected leave, in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") (doc. # 29: Compl., at ¶¶ 49-58). Defendant has filed a motion to dismiss (doc. # 30), which is now fully briefed. For the reasons set forth below, the Court denies defendant's motion.

### I.

In ruling on a Rule 12(b)(6) motion to dismiss, we construe plaintiff's complaint in the light most favorable to her, accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of plaintiff. *White v. Keely*, 814 F.3d 883, 887-88 (7th Cir. 2016). We summarize the relevant, well-pleaded facts below.

---

[1] On January 19, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 18).

Plaintiff worked for District 214 as a secretary at Elk Grove High School from May 2010 through June 2016; she states that she always performed her job satisfactorily (Compl., at ¶¶ 13, 14). Plaintiff contends that during her employment, her co-workers "regularly made derogatory remarks about Hispanic students and their families," which increased in frequency beginning around September 2014 (*Id.*, at ¶ 15). For example, one secretary made comments one to two times per month to the effect that Hispanic people come to America and want everything for free even though they have new cell phones and their nails done (*Id.*, at ¶ 16). Another secretary told Ms. Valdivia not to speak Spanish at work because they were in "America" (*Id.*, at ¶ 17). Plaintiff, who is Hispanic, found these comments degrading, hostile and offensive (*Id.*, at ¶ 18).

Ms. Valdivia complained about these comments to Elk Grove principal Paul Kelly "several times in 2015" and to assistant principal Val Norris in November 2015 (Compl., at ¶¶ 19-20). Ms. Norris and Mr. Kelly told her there was nothing they could do to address those comments because the secretaries' union was too strong (*Id.*).

Ms. Valdivia became "distraught" about her work environment (*Id.*, at ¶ 21). In or around March 2016, "in an effort to remove herself from the racially hostile work environment at Elk Grove High School," plaintiff applied for and was offered a position as a secretary at Wheeling High School, another school within District 214 (Compl., at ¶ 22). Ms. Valdivia began working there in June 2016, and in July 2016, an associate principal told her that "those people" -- referring to a Mexican family -- never pay their bills (*Id.*, at ¶¶ 23-24). Afterward, Ms. Valdivia became "extremely distraught and began crying regularly and uncontrollably at work" (*Id.*, at ¶ 25). While crying uncontrollably, she told her supervisor, Principal Angela Sisi (whom she had known since about 2012), that she was overwhelmed and afraid and she was unsure if she could continue working (*Id.*, at ¶¶ 25-26). In August 2016, Ms. Valdivia called school counselor Ruby

Aleman and Latino Outreach Family Coordinator David Maya while crying uncontrollably and told them she did not know whether she could continue working for District 214 (*Id.*, at ¶ 28). In July and/or August 2016, Ms. Valdivia asked Ms. Sisi to place her in a ten-month position to give her two months off each school year (*Id.*, at ¶ 27).

"In response to Valdivia's various concerns regarding her ability to work while in obvious distress," Ms. Sisi, Mr. Aleman and Mr. Maya told Ms. Valdivia that she had to decide between continuing or resigning her employment (Compl., at ¶ 29). On August 3, 2016, Ms. Valdivia again approached Ms. Sisi while crying uncontrollably and explained that she was confused and overwhelmed; Ms. Valdivia also told Ms. Sisi that she had not slept in weeks, had not been eating, and was losing weight (*Id.*, at ¶¶ 30-31). Ms. Sisi again told plaintiff that she needed to decide whether to continue working or to resign (*Id.*). On August 4, 2016, Ms. Sisi texted Ms. Valdivia to ask for a decision about her job (*Id.*, at ¶ 32). Ms. Sisi and Ms. Valdivia discussed Ms. Valdivia's potential resignation, and Ms. Valdivia stated that she would resign "due to medical reasons" and feeling overwhelmed (*Id.*, at ¶ 33). Ms. Sisi requested a written letter of resignation; Ms. Valdivia was hesitant to provide one, but she was unaware of any alternatives and she was unable to continue working at that time (*Id.*, at ¶¶ 34, 36). Ms. Valdivia provided a letter of resignation on August 4, 2016, effective August 11, 2016 (*Id.*, at ¶ 36).

Also on August 4, 2016, District 214 posted a job vacancy seeking to fill Ms. Valdivia's position (Compl., at ¶ 37). On August 9, 2016, Ms. Valdivia went to Ms. Sisi's home and told her she wanted to rescind her resignation (*Id.*, at ¶ 38). Shortly thereafter, Ms. Sisi told Ms. Valdivia that her replacement had been chosen and she could not return to her position (*Id.*, at ¶¶ 39-40). Defendant's school board accepted plaintiff's resignation on August 11, 2016 (*Id.*, at ¶ 41). Less than two weeks later, on August 23, 2016, Ms. Valdivia was hospitalized for four days

3

and diagnosed, for the first time, with depression, anxiety disorder, panic disorder and insomnia; she was cleared for secretarial work by her physician after treatment (*Id.*, at ¶¶ 42-43, 46).

## II.

Defendant argues that plaintiff's complaint should be dismissed because plaintiff has "failed to plead any facts" in support of either her Title VII or FMLA claim (doc. # 30: Def.'s Mot. to Dismiss, at ¶¶ 2-3). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Volling*, 840 F.3d at 382 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When applying the plausibility test, it is important to remember that the requirement to plead enough factual material to show the plausibility of a claim is not intended to transform federal notice pleading into a regime of fact pleading. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010).

### A.

In Count I, Ms. Valdivia alleges that defendant discriminated against her on the basis of her race in violation of Title VII because it knowingly and continually subjected her to a racially offensive and hostile work environment (Compl., at ¶¶ 51-52). Title VII prohibits "employers from requiring people to work in a discriminatorily hostile or abusive environment." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) (citing *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2440-41 (2013)). To state a Title VII hostile work environment claim, a plaintiff must allege that: "(1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or religion (or another reason forbidden by Title VII); (3) the harassment was

4

severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015).

The Seventh Circuit has "sometimes phrased the test differently, replacing the first prong—that the employee was subject to unwelcome harassment—with the requirement that the work environment was 'both subjectively and objectively offensive.'" *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896 n.6 (7th Cir. 2016) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011)). The question of whether the work environment was both subjectively and objectively offensive may be "subsumed by the question whether the harassment was severe or pervasive enough to rise to the level of a hostile work environment. In the end, the inquiry is the same." *Cole*, 838 F.3d at 896 n.6 (internal citations and quotations omitted).

In its memorandum in support of its motion to dismiss, defendant contends that Ms. Valdivia "failed to plead any facts which establish that District 214's employees' conduct was severe *and* pervasive" (doc. # 31: Def.'s Mem. in Supp. of Mot. to Dismiss at 4) (emphasis added). This is the wrong standard. This element of a hostile work environment claim "is in the disjunctive—the conduct must be either severe or pervasive. This means that one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013) (internal citations and quotations omitted). Moreover, as we noted above, a plaintiff need not plead facts that "establish" defendant's employees' conduct; "[t]he federal standard of notice pleading applies, so long as the plaintiff alleges facts sufficient to meet the new 'plausibility' standard applied in *Iqbal* and *Twombly*." *Bausch*, 630 F.3d at 558. In other words, plaintiff's claim is adequately pled if it gives defendant "fair notice of [the plaintiff's] claims and the grounds upon which those claims

rest, and the details in her [complaint] present a story that holds together." *Huri*, 804 F.3d at 834 (internal quotations and citations omitted).

In determining whether a defendant's alleged conduct is sufficiently severe or pervasive to state a claim of a hostile work environment, courts consider factors such as the nature (*e.g.*, physical or verbal) and frequency of the conduct, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the employee. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014). In this case, defendant contends that the complaint does not plausibly allege that defendant's employees' conduct was severe or pervasive because their comments were not offensive enough, the comments "were not directed to or even about Plaintiff" and plaintiff did not "establish the comments 'unreasonably' interfered with her work performance" (Def.'s Mem. at 6).

However, defendant acknowledges that plaintiff has "alleged repeated, and arguably, derogatory comments made about Hispanic families made by allegedly two District 214 employees" (Def.'s Mem. at 6). In addition, Ms. Valdivia alleged that her co-workers' comments so interfered with her work performance that she could no longer tolerate working at Elk Grove High School. She then transferred to Wheeling High School, but became distraught when she heard what she felt was a similarly hostile comment from a supervisor. We note that "it is premature at the pleadings stage to conclude just how abusive [plaintiff's] work environment was." *Huri*, 804 F.3d at 834. At this stage, plaintiff's allegations are sufficient to state a claim of a hostile work environment.

Two recent decisions by the Seventh Circuit support this determination. In *Huri*, the Seventh Circuit reversed the district court's dismissal of the plaintiff's hostile work environment claim because the appeals court found that the conduct that the plaintiff alleged -- such as

"screaming, prayer circles, social shunning, [and] implicit criticism" -- "could plausibly be abusive." *Huri*, 804 F.3d at 834. In *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829-30 (7th Cir. 2014), the Seventh Circuit reversed the district court's dismissal on the pleadings of the plaintiff's constructive discharge claim -- a claim which requires a work environment to be "intolerable" (even more severe than abusive) -- where the plaintiff's complaint included examples of "regular belittlement, unfair criticism, and unduly poor assessments." In explaining its decision, the *Carlson* court stated that, while "[t]he conditions [the plaintiff] described in her complaint may not ultimately qualify as intolerable, [] we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required." *Id.*

Courts in this district likewise have denied motions to dismiss hostile work environment claims based on allegations of repeated and ongoing verbal harassment. For example, in *Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at *5 (N.D. Ill. Feb. 28, 2017), the district court held that the plaintiff adequately pled a claim for hostile work environment where she alleged that "beginning in October 2012 and continuing through October 2014, [her supervisor] made sexual and homophobic comments to and around her," described specific incidents of verbal harassment (and one incident in which her supervisor showed her a pornographic movie) and described the behavior as "severe," "persistent," "ongoing," and "continuous." Similarly, in *Gomez v. City of Chicago*, No. 16 C 7743, 2017 WL 131565, at *3-4 (N.D. Ill. Jan. 13, 2017), the court held that the plaintiff adequately stated a claim for hostile work environment where he alleged that he was subjected to racist jokes and racist notes and was disciplined more harshly than non-Hispanic employees. *See also Silic v. BBS Trucking, Inc.*, No. 12 C 6557, 2013 WL 942207, at *3-4 (N.D. Ill. Mar. 11, 2013) (holding that the plaintiff's allegations of verbal abuse based on her gender were sufficient

7

to state a claim for hostile work environment because the complaint need not contain enough detail to firmly establish the severity or frequency of any harassment).[2]

In sum, plaintiff has alleged enough at this preliminary stage to give defendant notice of a plausible claim. Discovery will reveal whether plaintiff ultimately can prove what she has alleged.

**B.**

In Count II of her complaint, Ms. Valdivia contends that defendant interfered with her rights under the FMLA by failing to provide her with notice that she had a right to take job-protected leave pursuant to the FMLA because defendant knew or should have known that she was suffering from a medical condition that made her unable to perform her job (Compl., at ¶ 44). Instead, plaintiff contends that she was "forced to resign her position" (*Id.*, at ¶¶ 45, 48).

The FMLA entitles eligible employees to take twelve weeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for [an] employer to interfere with, restrain, or deny [an employee's] exercise of or . . . attempt to exercise" this right. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015) (quoting 29 U.S.C. § 2615(a)(1)). An FMLA interference claim requires a plaintiff to show that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to

---

[2] By contrast, cases in which courts in this district have dismissed hostile work environment claims for failure to state a claim involved only one, two or three alleged acts. *See, e.g., Harris v. Chicago Transit Auth.*, No. 14 C 9106, 2015 WL 5307721, at *6 (N.D. Ill. Sept. 10, 2015) (dismissing hostile work environment claim where the plaintiff alleged two incidents of harassment separated by a year); *Arce v. Chicago Transit Auth.*, No. 14 C 102, 2015 WL 3504860, at *4–5 (N.D. Ill. June 2, 2015) (dismissing hostile work environment claim where the complaint mentioned only three discrete "boorish" acts); *Wood v. Career Educ. Corp.*, No. 13 CV 8803, 2015 WL 1538800, at *6-7 (N.D. Ill. Mar. 31, 2015) (holding that one "inchoate allegation about verbal harassment" was conclusory and, therefore, insufficient to place the defendant on notice of the plaintiff's hostile work environment claim); *Butler v. Chicago Transit Auth.*, No. 13 C 5276, 2014 WL 3939654, at *7 (N.D. Ill. Aug. 12, 2014) (holding that one write-up, even if falsely based, was not enough to support the plaintiff's hostile work environment claim). Ms. Valdivia has alleged conduct that is far more pervasive than the conduct alleged in those cases.

leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied or interfered with . . . FMLA benefits to which he was entitled." *Preddie*, 799 F.3d at 816 (internal citations and quotations omitted). Defendant contends that Ms. Valdivia did not provide sufficient notice that she had a serious health condition that entitled her to leave under the FMLA, and thus, that she cannot state a claim for FMLA interference (Def.'s Mem. at 8-9).

The FMLA "notice requirement is not demanding: The employee's duty is merely to place the employer on notice of a probable basis for FMLA leave." *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724 (7th Cir. 2007) (internal citations and quotations omitted). An employee need not give direct notice of the seriousness of her health condition or even mention the FMLA or demand its benefits; indeed, direct notice may not be possible if the plaintiff "herself was unaware that she was suffering from a serious medical condition" or if the employee was unable to communicate her illness to her employer. *Id.* at 725. In such cases, the notice requirement may be met indirectly; "clear abnormalities in the employee's behavior may constitute constructive notice of a serious health condition." *Id.* at 725-26 (citing *Byrne v. Avon Prods.*, 328 F.3d 379, 381-82 (7th Cir. 2003)). In those cases, observable changes in an employee's condition or uncharacteristic or unusual conduct at work may themselves provide an employer with adequate notice of a serious medical condition and obviate the need for an express request for medical leave. *Burnett v. LFW Inc.*, 472 F.3d 471, 479-80 (7th Cir. 2006).

In her complaint, Ms. Valdivia alleges that in July 2016, one month after she transferred to Wheeling High School, she "became extremely distraught and began crying regularly and uncontrollably at work" (Compl., at ¶ 25). She cried uncontrollably multiple times to her supervisor, Ms. Sisi, whom she had known since 2012, and told her that she was overwhelmed,

9

afraid, not sleeping or eating, and unsure if she could continue to work (*Id.*, at ¶¶ 25-26, 30-31). Ms. Valdivia also cried uncontrollably to two other employees at the high school, telling them that she was unsure whether she could continue to work for defendant (*Id.*, at ¶ 28). Ms. Sisi's response was to tell Ms. Valdivia to decide whether or not to resign (*Id.*, at ¶ 32). Soon after her resignation, Ms. Valdivia was hospitalized for four days and diagnosed with depression, anxiety disorder, panic disorder and insomnia (*Id.*, at ¶ 42).

Defendant argues that plaintiff fails to state a claim for interference with the FMLA because: (1) defendant could not have known that Ms. Valdivia had a serious medical condition due to the short amount of time she had worked at Wheeling High School, and (2) it would be "absurd" for defendant to know that Ms. Valdivia had a serious medical condition before Ms. Valdivia herself knew (Def.'s Mem. at 8- 9). We find these arguments unpersuasive.

Ms. Valdivia has plausibly alleged that defendant was on notice that she might have been suffering from a serious health condition when Ms. Sisi asked her to decide whether to resign. Plaintiff's allegation that she had known Ms. Sisi since 2012 makes it plausible, at the pleading stage, that Ms. Sisi would have known that Ms. Valdivia's behavior was a dramatic departure from her normal behavior. What's more, Ms. Valdivia's alleged behavior -- which we take as true for purposes of this motion -- could be considered highly unusual for any employee, regardless of how long that employee had known her supervisor or worked in her job. Indeed, Ms. Valdivia alleges it was her uncontrollable crying at work that led Ms. Sisi, Ms. Aleman and Mr. Maya to question "her ability to work" and to demand a decision as to whether she would resign (Compl., at ¶ 29). Defendant's argument that Ms. Valdivia's regular, uncontrollable crying at work could be considered a normal "reaction to the stress of a new job" (doc. # 35: Def.'s Reply at 2-3) is beside the point. On a motion to dismiss, we do not attempt to grade the

relative plausibility of each party's take on the complaint's allegations. The plausibility of defendant's explanation is not what controls on a motion to dismiss; rather, the question is whether the plaintiff has alleged factual content sufficient to state a plausible claim. Here, Ms. Valdivia has plausibly alleged defendant had adequate notice that she had a serious medical condition that would qualify for FMLA leave.

Finally, the fact that Ms. Valdivia herself did not know of her medical condition at the time of her resignation is not fatal to her FMLA claim. The Seventh Circuit has pointed out that an employee with a mental health condition -- such as depression -- may be excused from giving direct notice because her medical condition may prevent her from communicating the nature of her illness. *See Burnett*, 472 F.3d at 479 (citing *Byrne*, 328 F.3d at 382).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied (doc. # 30). Defendant shall answer the complaint by June 5, 2017.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: May 15, 2017**