238/30

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NOEMI VALDIVIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO.: 1:16-cv-10333 |
| | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| TOWNSHIP HIGH SCHOOL DISTRICT 214, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TOWNSHIP HIGH SCHOOL DISTRICT 214's
## RESPONSES TO PLAINTIFF'S 56.1(B)(3)(C) STATEMENT OF ADDITIONAL FACTS

NOW COMES Defendant, TOWNSHIP HIGH SCHOOL DISTRICT 214 (hereinafter "District 214") by and through one of its attorneys DEBORAH A. OSTVIG of SCHAIN, BANKS, KENNY, & SCHWARTZ, LTD., and for Its Response to Plaintiff's 56.1(B)(3)(C) Statement of Additional Facts, states as follows:

1.    During her tenure at Elk Grove, Plaintiff worked in the same office space as two other assistants, Denise Heinol ("Heinol") and Judi Miller ("Miller"). Def. Ex. A, Valdivia Dep. at 31:1-24, 32:1-3.

**RESPONSE: Undisputed.**

2.    Plaintiff is Hispanic. Id. at 8:1-6, 78:24, 79:1. She emigrated from Mexico with her family as a child and is bilingual in English and Spanish. Id. at 8:1-6, 21:10-17, 57:5-23.

**RESPONSE: Undisputed.**

3.    Part of Plaintiff's role at Elk Grove was as a bilingual support staff member. Id. at 112:14-20. This included speaking Spanish with some of the school's Hispanic families. Id. at 42:12-19.

**RESPONSE: It is undisputed that Plaintiff was a bilingual support staff member who spoke Spanish with some of the school's Hispanic families. Defendant disputes that the conversation cited by Plaintiff is factually accurate. (Ex. H, p. 32:12-16.)**

4.      In June of 2011, through a written chat conversation Plaintiff complained to her supervisor, Sacchitello, that she was upset because her coworker, Denise Heinol ("Heinol") had made a number of racially derogatory statements about Mexicans and Hispanic people, including:

a.      "being sick and tired of these [] Mexicans, Illegal Aliens coming to the United States and not bothering to speak English and wanting everything handed down to them;"

b.      "before there was a bilingual secretary they would make these Mexicans learn the language and not cater to them;"

c.      "They just keep having babies because it is all handed down to them;"

d.      "these damn illegal aliens, Mexican coming here are not even filing taxes and getting paid under the table and still expect all services for free;"

e.      "She [Heinol] should just move to Mexico since they are all here and probably none left over there."

Ex. 2 to Def. Ex. H, Kelly Dep.

**RESPONSE: Defendant disputes that Ms. Saccchitello was Plaintiff's supervisor at the time Plaintiff direct messaged Ms. Sacchitello. (Ex. H. pp. 8:1-8; 14:5-11; 40:14-18; 67:7-10; 69:1-24.) It is undisputed that Plaintiff claimed Ms. Heinol made racially insensitive comments. (Ex. 2 of Ex. H.)**

2

5.      Plaintiff explained this was not the first time Heinol had made such comments and that Heinol often was rude to the Hispanic families that came in to the office. Id.

**RESPONSE: It is undisputed that Plaintiff claimed this was not the first time Ms. Heinol made "such comments".  It is disputed that Ms. Heinol was "often rude" to Hispanic families.  (Ex. 2 of Ex. H.)**

6.      Plaintiff also complained about these racially derogatory statements to Norris. Id.; Def. Ex. A, Valdivia Dep. at 120:12-17; Def. Ex. I, Norris Dep. at 34:1-25, 35:1-18, 39:1-11.

**RESPONSE:  Disputed.  (Ex. I, pp. 29:3 – 33:12; 36:24 –42:22 ; 49:25 – 50:13; 51:1-14; 52:22 – 53:1; 58:25 – 59:13; Ex. H, pp. 82:5 – 83:19.)**

7.      On June 2, 2011, Sacchitello emailed the chat conversation containing Valdivia's complaints to Kyle Burritt, the assistant principal and Heinol's supervisor. Ex. 2 to Def. Ex. H, Kelly Dep.

**RESPONSE:  Undisputed.**

8.      On August 31, 2015, Kyle Burritt sent this same chat conversation and Sacchitello's email to Paul Kelly and Megan Knight. Def. Ex. H, Kelly Dep. at 65:8-22, Ex. 2.

**RESPONSE:  Undisputed.**

9.      Heinol continued to regularly and consistently make similar derogatory comments up through and including 2015. Def. Ex. A, Valdivia Dep. at 42:1-24, 43:1-6, 56:5-9, 57:-20-24, 57:1-22, 60:7-16, 61:1-24, 62:4-15, 68:6-19.

**RESPONSE: Disputed.  (Ex. A, pp. 60:7 – 62:13; Ex. I, pp. 29:3 – 33:12; 36:24 – 42:22 ; 49:25 – 50:13; 51:1-14; 52:22 – 53:1; 58:25 – 59:13; Ex. H, pp. 32:3 – 8; 36:9 – 47:10; 59:10 – 16; 82:5 – 83:19; 94:6-20.)**

10.     Plaintiff's other coworker, Judy Miller, twice told Valdivia to stop speaking Spanish because "we're in America" when Valdivia was speaking with another employee in Spanish. Def. Ex. A, Valdivia Dep. at 107:20-24, 108:1-17, 109:7-24, 110:1-3, 112:7-24, 114:2-24, 115:1-24; Def. Ex. I, Norris Dep. at 34:1-25, 35:1-18.

**RESPONSE:  It is undisputed that Plaintiff claims these incidents occurred.**

11.     Miller complained about Valdivia speaking Spanish in front of her to Principal Kelly. Def. Ex. H, Kelly Dep. at 83:20-25.

**RESPONSE: Disputed.  (Ex. H, pp.  83:20 to 84:11).**

12.     On multiple occasions, Valdivia stood up to her coworkers and told them that the comments were inappropriate and made her feel uncomfortable. Def. Ex. A, Valdivia Dep. at 41:1-24, 42:1-24; Ex. 2 to Def. Ex. H, Kelly Dep. Valdivia would then leave the office to get away from Heinol's offensive commentary. Def. Ex. A, Valdivia Dep. at 41:23-24, 141:3-4; Ex. 2 to Def. Ex. H, Kelly Dep.

**RESPONSE: Disputed.  (Ex. I, pp. 29:3 – 33:12; 36:24 –42:22 ; 49:25 – 50:13; 51:1-14; 52:22 – 53:1; 58:25 – 59:13; Ex. H, pp. 32:3 – 8; 36:9 – 47:10; 59:10 – 16; 82:5 – 83:19; 94:6-20.)**

13.     Valdivia repeatedly complained about her coworkers' statements to Kelly and Norris, and complained that her coworkers mistreated Hispanic families. Def. Ex. A, Valdivia Dep. at 55:3-20, 61:7-16, 62:2-23, 65:15-24, 66:13-18, 67:1-21, 120:12-17, 141:3-19; Def. Ex. H, Kelly Dep. at 26:1-24, 28:1-10, 67:1-25, 68:1-23; Def. Ex. I, Norris Dep. at 34:1-25, 35:1-18, 39:1-11.

4

**RESPONSE: Disputed. (Ex. I, pp. 29:3 – 33:12; 36:24 –42:22 ; 49:25 – 50:13; 51:1-14; 52:22 – 53:1; 58:25 – 59:13; Ex. H, pp. 32:3 – 8; 36:9 – 40:11; 94:6-20; 40:25 – 47:10; 59:10 – 16; 82:5 – 83:19.)**

14.     In March of 2016, Plaintiff applied for a position at Wheeling High School as assistant to the Principal, Sisi. <u>Def. Ex. A</u>, <u>Valdivia Dep</u>. at 106:3-5, 136:8-11; 142:11-19; <u>Def. Ex. G</u>, <u>Sisi Dep</u>. at 44:5-14.

**RESPONSE:  Undisputed.**

15.     The position at Wheeling High school represented an increase in pay and prestige over Valdivia's previous position. <u>Def. Ex. A</u>, <u>Valdivia Dep</u>. at 45:4-15; <u>Def. Ex. G</u>, <u>Sisi Dep</u>. at 58:1-19, 85:19-22.

**RESPONSE:  Undisputed.**

16.     Sacchitello, Sisi's mother, recommended Plaintiff as the best assistant she had ever had. <u>Def. Ex. G</u>, <u>Sisi Dep</u>. at 54:21-25, 55:1-3. Following the announcement that Sisi had hired Valdivia, Sisi's colleague emailed to commend her on the choice in light of Valdivia's strong reputation. <u>Pltf. Ex. 2</u>.

**RESPONSE:  Undisputed.**

17.     District 214 employs people in 8-month, 10-month, and 12-month positions. <u>Def. Ex. G</u>, <u>Sisi Dep</u>. at 19:1-7. Plaintiff was hired at Wheeling for a 12-month position. <u>Id</u>. at 31:4-8.

**RESPONSE: It is undisputed that there are 10-month and 12-month positions and that Plaintiff was hired at Wheeling for a 12-month position.  It is disputed that there are 8-month positions at District 214. (Ex. G, pp. 18:14 – 20:15.)**

18.     In April of 2016, Plaintiff was hired by Wheeling and scheduled to begin work in July 2016. Ex. 11 to Def. Ex. A; Def. Ex. G, Sisi Dep. at 56:16-18, 57:9-11. Sisi and Plaintiff went to a lunch with other coworkers from Wheeling. Def. Ex. G, Sisi Dep. at 56:2-25.

**RESPONSE: Undisputed.**

19.     In May of 2016, Valdivia asked for, and then arranged, to meet with the outgoing assistant in order to train with her. Pltf. Ex. 3.

**RESPONSE: Undisputed.**

20.     In June of 2016, Valdivia asked, and was allowed, to start her new position early. Valdivia chose to start early at Wheeling with the understanding that she would be paid at a lower rate until July 1. Pltf. Ex. 4.

**RESPONSE: Undisputed**

21.     Beginning in June of 2016, Valdivia feeling overwhelmed, experiencing racing thoughts, and obsessive worrying. Def. Ex. A, Valdivia Dep. 144:18-24, 146:1-10; 148:9-24; 149:1-24; 162:9-17; 166:3-7. She regularly would burst into tears and experienced frequent crying fits, including at work. Id. at 161:12-24, 166:3-17, 168:2-24. Valdivia also struggled to sleep and began to lose weight. Id. at 144:24, 145:1-12, 161:12-24.

**RESPONSE: It is undisputed that Plaintiff claims she was feeling overwhelmed, experiencing racing thoughts and obsessive worrying and struggled to sleep and began to lose weight.  It is disputed that Plaintiff would burst into tears and experienced frequent crying fits at work.  (Ex. A, p. 185:1-7; Ex. G, pp. 11:6-7; 18:2-3; 20:20-22; 28:12-13; 67:25 – 70:8.)**

22.     Plaintiff regularly cried in front of Sisi and repeatedly told Sisi that she was feeling overwhelmed, didn't know what was wrong with her, was confused, afraid, couldn't

sleep, and that she believed she was experiencing medical issues. Id. at 167:19-23, 168:1-24, 170:3-5, 171:15-18, 184:11-19; Def. Ex. G, Sisi Dep. at 68:2-18.

**RESPONSE: Disputed. (Ex. A, p. 185:1-7; Ex. G, pp. 11:6-7; 18:2-3; 20:20-22; 28:12-13; 67:25 – 72:13.)**

23.     At the same time, Plaintiff was considering leaving her promotion for a job at Dundee-Crown High School that was less prestigious and paid less, but was closer to home. The Dundee-Crown job was a 10-month position. Def. Ex. G, Sisi Dep. at 85:19-22.

**RESPONSE: It is undisputed that Plaintiff was considering leaving her job at Wheeling High School, however the remaining allegations in Paragraph 23 are disputed. (Ex. G, pp. 84 – 85.)**

24.     Plaintiff asked Sisi if she could have a ten-month position so that she could figure out what was wrong with herself and "get back to normal" during the two months off from work. Def. Ex. A, Valdivia Dep. at 215:1-14; Def. Ex. G, Sisi Dep. as 72:14-19.

**RESPONSE: Disputed. (Ex. G. 72:1-25; 91:12 – 92:6).**

25.     Plaintiff told Sisi that one of the reasons she was wanted to leave was due to medical issues. Def. Ex. A, Valdivia Dep. at 169:1-23.

**RESPONSE: Disputed.  (Ex. A, pp. 185:19 – 187:16; G, pp. 73:3 – 74:5; 76:14 – 77:17; 86:7 – 88:3.)**

26.     On August 9, 2016, Valdivia showed up, unannounced to Sisi's home around 7:00AM, crying and asking to rescind her resignation. Def. Ex. A, Valdivia Dep. at 189:6-9, 190:4-7; Def. Ex. G, Sisi Dep. at 64:9-10.

**RESPONSE: It is undisputed that Plaintiff came to Principal Sisi's house at 7:00 a.m. on or about August 9, 2016, however it is disputed that Plaintiff was crying or upset. (Ex. G. p. 64:14-65:7.)**

27.     In her entire professional career, Sisi had never experienced an employee showing up at her house in such a manner. Def. Ex. G, Sisi Dep. at 64:7-13, 23-25; 93:2-4.

**RESPONSE: It is undisputed that Principal Sisi had never experienced an employee showing up at her house at 7:00 a.m., however the remaining allegations in Paragraph 27 are disputed. (Ex. G. p. 64:14-65:7; 91:12 – 92:6.)**

28.     When Sisi refused to accept Valdivia's request to rescind her resignation, the School Board had yet to approve the resignation, and Defendant had not yet hired a replacement for Valdivia's position. Id. at 21:18-25, 91:14-25; Def. Ansr. (D.E. 38) at ¶ 41.

**RESPONSE: Undisputed.  (Ex. G, pp. 21:18 – 22:23; 91:12 – 92:6).**

29.     Sisi, herself, believed that the FMLA pertained only to maternity leave at the time Valdivia resigned. Def. Ex. G, Sisi Dep. at 99:16-25, 100:1-17. Only after this lawsuit was filed did Sisi learn that the FMLA covers a wide array of serious health conditions, including mental health. Id. at 102-04.

**RESPONSE: Disputed.  (Ex. G, pp. 99:16 – 105:18.)**

30.     Plaintiff began work at Dundee-Crown High School on August 12, 2016. Def. Ex. A, Valdivia Dep. at 194:15-21; Def. Ex. F. By August 18, 2016, Plaintiff's symptoms had reached the point that she stopped going to work and did not call in to explain her absence. Def. Ex. A, Valdivia Dep. at 193:11-17; Def. Ex. F.

**RESPONSE: Disputed.  (Group Ex. F.)**

31.     On August 20, 2016, Plaintiff was hospitalized for four days and given medication for a severe depressive episode and anxiety, as well as treatment for her inability to sleep. Id. at 194:1-5; Pltf. Ex. 5, Deposition of Dr. Waliuddin at 23:1-6, 28:2-24, 25:1-10.

**RESPONSE: Undisputed.**

32.     On August 31, 2016, Valdivia began seeing a psychiatrist. Pltf. Ex. 5, Dr. Waliuddin Dep. at 11:10-23; Pltf. Ex. 6. She told her psychiatrist that she had suffered a great deal of stress during her time at Elk Grove because of racially derogatory comments. Pltf. Ex. 5, Dr. Waliuddin Dep. at 25:1-24, 26:1-10; Pltf. Ex. 6.

**RESPONSE: It is undisputed that Plaintiff saw a psychiatrist after her hospitalization, however the remaining allegations in Paragraph 32 are disputed. (Plaintiff's Ex. 5, pp. 25:1 – 26:16; 29:11 – 34:12, 39:10 – 42:22.)**

33.     On August 31, 2016, Valdivia was diagnosed with severe major depressive disorder and moderate to severe generalized anxiety disorder Pltf. Ex. 7.

**RESPONSE: Undisputed.**

Respectfully submitted,

TOWNSHIP HIGH SCHOOL DISTRICT 214

By:   s/ Deborah A. Ostvig
           One of Its Attorneys

Michael E. Kujawa, ARDC #6244621
Deborah A. Ostvig, ARDC #6287031
Schain, Banks, Kenny & Schwartz, Ltd.
70 W. Madison Street, Suite 5300
Chicago, Illinois  60602
Phone:  (312) 345-5700
Fax:  (312) 345-5701
mkujawa@schainbanks.com
dostvig@schainbanks.com
K:\30 - Valdivia v. D214\Pleadings\Word Documents\MSJ\Def. Township High School Dist. 214's Responses to Plaintiff's 56.1 (B)(3)(C).docx