# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NOEMI VALDIVIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 10333 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| TOWNSHIP HIGH SCHOOL | ) |
| DISTRICT 214, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On November 13, 2018, a jury trial commenced on plaintiff Noemi Valdivia's claim that defendant Township High School District 214 ("District 214") had interfered with her right to take job-protected leave, in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). On November 14, 2018, at the close of plaintiff's case, defendant filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) (doc. # 87), which this Court took under advisement (doc. # 88). The next day, the jury returned a verdict in favor of plaintiff and against defendant in the amount of $12,000.00 in lost wages and benefits (doc. # 93), and we denied defendant's Rule 50(a) motion without prejudice (doc. # 89).

Now pending before the Court are plaintiff's bill of costs (doc. # 94), plaintiff's motion for prejudgment interest, liquidated damages and equitable damages (doc. # 100), and defendant's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) (doc. # 97). Each of these motions is now fully briefed. For the reasons that follow, we deny defendant's motion for judgment as a matter of law and grant in part and deny in part plaintiff's

---

[1] On January 19, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 18).

bill of costs and plaintiff's motion for prejudgment interest, liquidated damages and equitable damages.

## I.

We address defendant's motion first. On a renewed motion for judgment as a matter of law under Rule 50(b), the Court "examine[s] the record as a whole to determine whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the jury's verdict. . . . [W]e will reverse the verdict only if . . . no rational jury could have found for the prevailing party." *United States v. Funds in the Amount of One Hundred Thousand & One Hundred Twenty Dollars ($100,120.00)*, 901 F.3d 758, 769-70 (7th Cir. 2018) (internal citations and quotations omitted). In reviewing the evidence presented at trial, the Court "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A Rule 50(b) motion may only be granted "where the evidence supports but one conclusion – the conclusion not drawn by the jury." *Ryl-Kuchar v. Care Ctrs., Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009).

Defendant contends that the evidence presented at trial was not sufficient to support the jury's verdict that it had interfered with plaintiff's right to FMLA leave.[2] At trial, the Court instructed the jury that plaintiff had to prove the all of the following by a preponderance of the evidence: (1) that plaintiff had major depressive disorder and/or generalized anxiety disorder; (2) that one or more of these conditions was a serious health condition; (3) that defendant had appropriate notice of plaintiff's need for leave; and (4) that defendant interfered with plaintiff's

---

[2]Defendant does not challenge this Court's evidentiary rulings at trial or the jury instructions, which were essentially adopted from the Seventh Circuit pattern instructions and agreed to in advance by the parties (doc. # 110: Pl.'s Resp. to Def.'s Mot. at 1).

2

right to take FMLA leave by failing to advise her of her right or eligibility to take leave (Instruction No. 16). Defendant argues that the evidence did not support the jury's finding that plaintiff was suffering from a serious health condition or that defendant had actual or constructive notice of plaintiff's need for leave based on that condition (doc. # 97: Def.'s Rule 50(b) Mot. at 2). We disagree.

### A.

At trial, the Court instructed the jury that a "serious health condition" is defined as a "mental condition that involves inpatient care in a hospital, or requires continuing treatment by a health care provider," which means plaintiff was "unable to work or perform other regular daily activities due to that condition, and was treated on at least one occasion by a health care provider resulting in a regimen of continuing treatment under the supervision of a health care provider" (Instruction No. 17). Defendant contends that no reasonable jury could have found plaintiff had a serious health condition because "the only evidence that Plaintiff has offered in support of her claim that she was suffering from a 'serious health condition' during her employ with District 214 is her own 'general testimony' to that effect" (doc. # 99: Def.'s Mem. in Supp. of Mot. at 7). Contrary to defendant's contention, plaintiff offered more than just "general testimony" in support of her claim that she had a serious medical condition while she was employed as an assistant to principal Angela Sisi at Wheeling High School.

*First*, plaintiff's own testimony described her condition in some detail. In June 2016, she started losing her appetite and not sleeping well, her energy waned, she began to feel overwhelmed and she had trouble getting out of bed (Def.'s Mem., Ex A: Trial Tr. at 70:6-71:15). Plaintiff testified that in July 2016, those feelings intensified so much that she worried she could not adequately care for her children while commuting to work and that she applied for a job at a school

in District 300, closer to her home. During that month, she would arrive late to work, she had trouble concentrating and finishing projects, she went to Ms. Sisi's office multiple times to talk about her problems, and she began crying profusely and uncontrollably at work, including in Ms. Sisi's office, sometimes leaving work early because she could not stop crying (*Id.* at 72:1-73:23; 74:4-25, 78:20-80:3; 81:13-18; 83:5-8, 85:24-25).

Plaintiff testified that her feelings and behavior deteriorated even further in August 2016. On August 2, 2016, plaintiff went into Ms. Sisi's office crying profusely and pacing, debating whether she should take a job at District 300 because it might allow her more time with her children; she eventually went home early because she could not control her crying (*Id.* at 86:9-87:7). On August 3, 2016, plaintiff spoke with Ms. Sisi again, still crying and upset, still stressed about whether to take the District 300 position, and she again left work early because she could not stop crying (*Id.* at 88:5-89:12). On August 4, 2016, plaintiff arrived late to work; she was scared and overwhelmed, and she felt pressured by Ms. Sisi to submit her letter of resignation (*Id.* at 90:25-93:14). Then, on August 9, 2016, plaintiff showed up crying and upset at Ms. Sisi's front door before 6:30 a.m., pleading with Ms. Sisi to rescind the resignation she had tendered a few days earlier (*Id.* at 95:18-96:17). Plaintiff continued crying and pleading with Ms. Sisi at the office later that morning, but Ms. Sisi did not allow her to rescind her resignation; plaintiff left the office around 9:30 a.m. and did not return (*Id.* at 98:18-101:11).

*Second*, plaintiff offered evidence that on August 11, 2016, she visited Lisa Glosson, M.D., whose report of that visit was admitted into evidence (Def.'s Mem., Ex. G: Joint Exhibit JX6A). The report stated that plaintiff had been suffering anxiety, panic attacks, and severe depression for several weeks, and Dr. Glosson prescribed her Xanax and later Celexa (*Id.*).

*Third*, plaintiff offered evidence that she visited the emergency department at Saint Joseph Hospital on August 21, 2016 (Def.'s Mem., Ex. H: Joint Exhibit JX6B). The medical report from that visit, which was admitted into evidence, states that plaintiff appeared anxious and in tears and that the medications had been ineffective in controlling her anxiety and depression (*Id.*).

*Fourth*, plaintiff offered evidence that on August 23, 2016, she returned to Saint Joseph Hospital, where she was admitted for four days and given medication for severe major depressive disorder and anxiety (Joint Exhibit JX6B). The medical reports from plaintiff's inpatient hospital stay were also admitted into evidence.

*Fifth*, plaintiff offered evidence that she began regularly seeing a psychiatrist, Syed Waliuddin, M.D., on August 31, 2016. Dr. Waliuddin testified at the trial and his medical records were admitted into evidence (Def.'s Mem., Ex. I: Joint Exhibit JX6C). Dr. Waliuddin testified that based on plaintiff's medical history and his examination, he diagnosed her with severe major depressive disorder and generalized anxiety disorder (Trial Tr. at 223:3-19, 224:4-7). He testified that a diagnosis of major depressive disorder generally requires an individual to have symptoms for two or more weeks, and that it would be "difficult for anybody to work" with plaintiff's symptoms, including excessive worry, insomnia, crying spells, racing thoughts, inability to focus, and lack of motivation (*Id.* at 221:9-24, 222:3-7, 228:18-25).

While no medical expert examined plaintiff while she was still working at Wheeling High School, plaintiff's testimony, together with the medical reports from August 2016 and "all reasonable inferences permissibly drawn therefrom, was sufficient to support the jury's verdict." *Funds*, 901 F.3d at 769-70. Although defendant argues these medical reports cannot show plaintiff had a serious health condition before the dates of these reports (Def.'s Mem. at 7), evidence that plaintiff received certain diagnoses after she left her employment with Wheeling High School

5

"bore not only on the question whether [she] had a serious medical condition . . . but also on the questions whether [the employer] likely knew of [her] need for FMLA leave and whether [plaintiff] had been capable of giving notice [her]self." *Byrne v. Avon Prod., Inc.*, 125 F. App'x 704, 705 (7th Cir. 2004). On August 11, 2016, Dr. Glosson reported plaintiff as having severe depression for several weeks. And, Dr. Waliuddin testified that a diagnosis of severe depressive disorder meant that a person had exhibited symptoms for two or more weeks. This testimony allowed the jury to conclude that Ms. Valdivia showed symptoms of depression at least as of July 2016, while she was still at Wheeling High School.

The Seventh Circuit has recognized that an employee who does not visit a health care provider "during the flare-up of the chronic condition such as depression," could show he or she was unable to work due to a serious health condition even though "[t]here would be no medical testimony about the [employee's] incapacity on that particular day." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 839 (7th Cir. 2014). *See also Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (holding that the plaintiff could show he was entitled to FMLA leave based on his incapacity due to prostate cancer even though he was not diagnosed until after he was fired). Reviewing the testimony and the medical reports admitted at trial in the light most favorable to plaintiff, we find that the jury reasonably concluded that plaintiff had a serious health condition while she was working at Wheeling High School.

### B.

The jury was instructed that "[p]laintiff did not need to request FMLA leave, if the Defendant knew or should have known from the circumstances that the Plaintiff needed FMLA leave or was so incapacitated that she could not provide notice of her need for leave" (Instruction No. 18). Defendant acknowledges that plaintiff displayed a "level of emotion . . . regarding her

decision to leave employment with District 214," but contends this was "nowhere near enough to put D214 on notice that plaintiff had severe anxiety or depression rendering her unable to work" (Def.'s Mem. at 10). Defendant argues that plaintiff "failed to present any evidence that she was exhibiting any outward manifestations of anxiety or depression so as to put District 214 on notice that she was entitled to FMLA leave or that she was unable to work as a result of her alleged condition" (*Id.* at 2). Again, we must disagree.

The FMLA "notice requirement is not demanding: The employee's duty is merely to place the employer on notice of a probable basis for FMLA leave." *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724 (7th Cir. 2007) (internal quotations omitted). An employee may meet the FMLA notice requirement with "constructive notice" of a serious health condition where an employee is unable to communicate his illness to his employer or there are "clear abnormalities in the employee's behavior." *Id.* at 726. In those cases, "observable changes in an employee's condition" or "uncharacteristic conduct at work" may themselves provide an employer with adequate notice of a serious medical condition. *Burnett*, 472 F.3d at 479-80. This approach reflects the view that direct notice may not be possible if the plaintiff "herself was unaware that she was suffering from a serious medical condition." *Stevenson*, 505 F.3d at 725.[3]

As we described above, plaintiff testified that she cried uncontrollably and profusely multiple times in Ms. Sisi's office, often leaving work early on these days and not completing her projects, culminating in plaintiff showing up in tears early in the morning on August 9, 2016, at Ms. Sisi's front door, ringing her doorbell and waking up Ms. Sisi's children.[4] Although Ms. Sisi

---

[3] Other circuits have called into question the validity of constructive notice in the FMLA context since the relevant regulation was amended in 2009. *See, e.g., Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 788 (8th Cir. 2009). The Seventh Circuit has acknowledged this conflict, but it has not yet addressed it. *See Guzman v. Brown Cty.*, 884 F.3d 633, 638 n.3 (7th Cir. 2018).

testified that she never saw plaintiff "crying at work," she also testified that plaintiff "would get teary-eyed always about leaving me or the commute" and "tears would come down her face" (Trial Tr. at 434:22-24; 437:14-25). It was reasonable for the jury to find plaintiff's testimony as to her behavior in front of Ms. Sisi more credible than Ms. Sisi's testimony. And, plaintiff's self-described behavior contrasted starkly with the behavior Ms. Sisi testified she expected from plaintiff based on recommendations from Ms. Sisi's associate principal and Ms. Sisi's own mother, who had described plaintiff to Ms. Sisi as "the best assistant I ever had," a "go-getter [who] thinks outside the box and is really able to . . . help the function in the office" (*Id.* at 404:23-406:4).

The trial evidence allowed the jury to reasonably find that plaintiff's behavior was so unusual, and so out of character with her years of highly regarded service at Elk Grove High School, that defendant should have known that plaintiff needed FMLA leave. Thus, we find no sound basis to disturb the jury's verdict of $12,000.00 in damages on plaintiff's FMLA claim.

## II.

Plaintiff has moved for prejudgment interest, liquidated damages and equitable damages (doc. # 100). Defendant contends that plaintiff "is not a prevailing party in this FMLA matter and thereby should not receive any damages in addition to the jury award" (doc. # 109: Def.'s Resp. at 1). Alternatively, defendant contends that plaintiff is not entitled to liquidated damages or equitable damages (*Id.*). We address each of these issues in turn.

---

[4]In its memorandum, defendant contends that plaintiff's August 9 behavior was irrelevant to the FMLA claim because plaintiff had already resigned her position (Def.'s Mem. at 10). This argument is a nonstarter. As plaintiff points out, she was still a District 214 employee at the time of that encounter, as her resignation was not scheduled to take effect until August 11, 2016 (Pl.'s Mem. at 10). And, Ms. Sisi testified that she had the authority to allow plaintiff to withdraw the resignation, but chose not to exercise it (Trial Tr. at 429:2-10).

8

## A.

Defendant contends that plaintiff is not a prevailing party because the jury's award of $12,000.00 was less than ten percent of plaintiff's settlement demands, both before and after plaintiff's Title VII claim was dismissed (Def.'s Resp. at 2). In making this assertion, defendant relies on *Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999). In *Perlman*, the Seventh Circuit acknowledged that "[d]istrict judges have substantial discretion to allocate costs under Rule 54," but held that the district judge in that diversity suit abused his discretion by treating the plaintiff as a prevailing party and awarding costs where the plaintiff lost on his federal claim and recovered less than seven percent of his original demand on his state law claims. *Id.* at 859.

The analysis in *Perlman* is inapposite because it interprets who is a prevailing party under Rule 54. *Perlman*, 185 F.3d at 859. By contrast, the FMLA, the statute at issue in this case, dictates that any employer who interferes with any employee's right to FMLA leave "*shall be liable to any eligible employee affected* . . . for damages equal to . . . the amount of . . . any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation . . ." plus interest "calculated at the prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(i)(I), (ii) (emphasis added). Here, there is no doubt that the jury found defendant liable to plaintiff for violating the FMLA.

The Seventh Circuit has interpreted similar language in the attorney's fees provision of the FMLA as mandatory. Section 2617(a)(3) states that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). The Seventh Circuit held that this provision, "unlike most other statutory fee-shifting provisions . . . *requires* an award of attorneys' fees to the plaintiff when applicable. The award is not left to the

discretion of the district court." *Franzen v. Ellis Corp.*, 543 F.3d 420, 430 (7th Cir. 2008) (emphasis in original). The court opined that the language in Section 2617(a)(3) "may apply more broadly than similar provisions in other statutes that refer instead to 'prevailing parties.'" *Id.*

Moreover, plaintiff asserts that her settlement demands included not only lost wages and benefits (which the jury awarded), but also liquidated damages, attorney's fees and costs, so that the $12,000.00 jury award exceeded ten percent of plaintiff's demands for lost wages and benefits (doc. # 112: Pl.'s Reply at 2-4). We agree. Thus, whether assessed under the FMLA or under Rule 54, we find that plaintiff is the prevailing party in this case.

### B.

As the prevailing party, plaintiff seeks prejudgment interest in the amount of $1,241.09. An award of interest on a prevailing plaintiff's damages award is mandatory under the FMLA, which states that any employer who interferes with an employee's right to FMLA leave "shall be liable" for the interest on the damages awarded to the employee, "calculated at the prevailing rate." 29 U.S.C. § 2617(1)(A)(ii). Defendant does not dispute plaintiff's calculation of prejudgment interest, and the Court finds no error in it. Accordingly, we grant plaintiff's motion for an award of $1,241.09 in interest.

### C.

Defendant objects to plaintiff's request for an award of $13,241.09 in liquidated damages. Under the FMLA, any employer who interferes with an employee's right to take FMLA leave "shall be liable" for "an additional amount as liquidated damages equal to the sum" of the employee's damages plus prejudgment interest. 29 U.S.C. § 2617(a)(1)(a)(iii). However, if the employer "proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that

the act or omission was not a violation of section 2615," the Court has discretion not to award liquidated damages. *Id.* "This good faith defense is narrowly construed, and places upon an employer a substantial burden in showing that it acted reasonably and in good faith." *Rasic v. City of Northlake*, No. 08 C 104, 2010 WL 3365918, at *13 (N.D. Ill. Aug. 24, 2010) (internal citations and quotations omitted). We find that defendant has not met its burden.

In arguing that its actions were reasonable and in good faith, defendant repeats its long-held theory of the case: that defendant believed plaintiff's stated reasons for resigning her position at Wheeling High School -- she had sought and received a job closer to home -- and "there is no evidence that Principal Sisi believed Plaintiff needed FMLA leave" (Def.'s Resp. at 3-4). However, as explained above, plaintiff offered ample evidence for the jury to reject Ms. Sisi's assertion that she did not know plaintiff needed FMLA leave. "[J]uries are entitled to choose among inferences supported by the record." *Byrne*, 125 F. App'x at 705 (affirming liquidated damages award in FLMA case despite the defendant's contention that the evidence could have supported a verdict in its favor). Here, the jury was entitled to believe plaintiff's testimony concerning her conduct (such as frequent crying and other unusual behavior) and to find unbelievable Ms. Sisi's testimony that she saw nothing unusual or concerning about that behavior (such as her denial that she saw plaintiff crying, despite seeing tears roll down her face).

Therefore, we find that defendant has not met its burden of proving that its interference with plaintiff's right to FMLA leave was done in good faith or that it had reasonable grounds for believing plaintiff was not entitled to FMLA leave. We grant plaintiff's motion for an award of $13,241.09 in liquidated damages, which is the sum of the $12,000.00 in backpay awarded by the jury and the $1,241.09 in prejudgment interest.

## D.

Plaintiff also seeks an award of $53,638.66 in front pay (Pl.'s Mot. at 8). The FMLA states that any employer who interferes with an employee's FMLA rights shall be liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). "[W]hen reinstatement is infeasible, the plaintiff is free to seek in lieu of that remedy an award of 'front pay,' designed to put him in the identical financial position that he would have occupied had he been reinstated." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995). "Front pay is the difference (after proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future in his next best employment." *Id.* It is within the Court's discretion whether to award this equitable relief. *Id.*

Plaintiff argues that she is entitled to front pay because based on "[h]er six-plus year tenure, in conjunction with an unblemished employment record (including consistently excellent performance reviews," had she been granted FMLA leave, "she would have continued working for District 214 for the foreseeable future" (Pl.'s Mot. at 7). Plaintiff asserts that there is "no basis to conclude that Ms. Valdivia would separate from District 214 during the front pay period, were she still employed" (*Id.* at 8). Plaintiff requests $53,638.66 in front pay, which she calculated was the difference between her "would-be rate" of pay if she still worked at Wheeling High School and her current rate of pay working at Fremd High School in District 211, from November 15, 2018 through November 15, 2020 (Pl.'s Mot., Ex. C). Included in this total is the full pay she would have received each 12-month period at District 214, even though her "[c]urrent position is 10 months per year, with two months in the summer unpaid" (*Id.*).

Plaintiff has failed to show that the Court should exercise its discretion to award front pay. Contrary to plaintiff's contention, there is ample basis to conclude that plaintiff would have separated from District 214 before the front pay period.

*First*, based on the evidence, we find it is unlikely that plaintiff would have continued to work in a 12-month, or year-round, position at Wheeling High School. Although she worked 12-month periods for District 214 from May 2010 to August 2016, plaintiff has not worked summers since she left Wheeling High School. She worked in a position in District 300 for four days and then began a 12-month position in District 47, but she only worked in District 47 from September 2016 through March 2017 (Trial Tr. at 189:7-21, 195:18-196:4). At that point, plaintiff applied for a 10-month position at Fremd High School in District 211; she began working in that position on April 3, 2017, and she was still working there at the time of trial (*Id.* at 196:5-198:16). This is consistent with the desire that plaintiff expressed while she was still employed at Wheeling High School to transition from a 12-month to a 10-month per year position (*Id.* at 83:24-84:15).

*Second*, plaintiff's attorney asked the jury to award $57,256.70 in backpay damages, the additional amount she would have earned had she not left her job at Wheeling High School, calculated through the day of trial (doc. # 107: Trial Tr. at 583:14-19). However, the jury awarded plaintiff only $12,000.00 in backpay, indicating that the jury was not convinced that plaintiff would have kept working at Wheeling High School even if defendant had not interfered with her right to FMLA leave.

*Third*, there is no inconsistency between the jury's finding that plaintiff was entitled to FMLA leave in August 2016, and the jury's award that reflects its determination that even if plaintiff had taken FMLA leave, she would not have stayed much longer in her position at Wheeling High School. A finding that plaintiff's conduct put defendant on notice that she needed

13

FMLA leave is not at odds with a conclusion that a reason that plaintiff had anxiety and depression was her stress over the demands of the job and the extent it took her away from her family, and that as a result, plaintiff would not remain at Wheeling High School for long. We find plaintiff's suggestion otherwise too speculative a basis on which to base an award of front pay. *See Sheils v. Gatehouse Media, Inc.*, No. 12 C 2766, 2015 WL 6501203, at *11 (N.D. Ill. Oct. 27, 2015) (quoting *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992) ("front pay awards, while often speculative, cannot be unduly so").

### III.

Finally, we address plaintiff's bill of costs (doc. # 94). Defendant contends that plaintiff's bill of costs for $2,947.90 should be reduced by $716.25, which accounts for the costs associated with the depositions of Paul Kelly and Valerie Norris (doc. # 95). Defendant argues that Mr. Kelly's and Ms. Norris's testimony was relevant only to plaintiff's Title VII claim, which this Court dismissed on summary judgment. In response, plaintiff argues that these depositions related to both her Title VII and FMLA claim, but "acknowledges . . . that these particular depositions focused primarily on her Title VII claim" (doc. # 96: Pl.'s Resp. to Def.'s Objection to Bill of Costs at 2). Accordingly, plaintiff proposes a 75 percent reduction in the costs related to these two depositions, so that her total bill of costs would be reduced by $537.19, for a total bill of costs of $2,410.71. We agree with plaintiff and grant plaintiff's bill of costs with the 75 percent reduction in the costs of Mr. Kelly's and Ms. Norris's depositions.

### CONCLUSION

For the foregoing reasons, the Court denies defendant's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) (doc. # 97). The Court grants plaintiff's bill of costs (doc. # 94), but in the reduced amount of $2,410.71. The Court grants in

part and denies in part plaintiff's motion for prejudgment interest, liquidated damages and equitable damages (doc. # 100). The Court grants plaintiff's motion to add to the $12,000.00 jury verdict an award of $1,241.09 in prejudgment interest and $13,241.09 in liquidated damages, and denies plaintiff's motion for equitable damages in the form of front pay.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: February 20, 2019