## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NOEMI VALDIVIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 10333 |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| TOWNSHIP HIGH SCHOOL | ) | |
| DISTRICT 214, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

In this case, plaintiff, Noemi Valdivia, sued defendant, Township High School District 214, for allegedly subjecting her to a racially offensive and hostile work environment in violation of Title VII and interfering with her right to take job-protected leave, in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") (doc. # 29: Am. Compl. at 7-8). Defendant filed a motion to dismiss plaintiff's complaint for failure to state a claim, which this Court denied on May 15, 2017 (doc. # 37). After discovery, defendant filed a motion for summary judgment, and on March 20, 2018, after briefing by the parties, this Court granted the motion as to plaintiff's Title VII claim, but denied the motion as to plaintiff's FMLA claim (doc. # 64). The parties reported to the Court that not all parties were interested in participating in a settlement conference, and the FMLA case was set for trial on November 13, 2018 (doc. # 67).

The parties filed their proposed final pretrial order on August 6, 2018. In the final pretrial order, plaintiff calculated her net damages at $90,232.78 (gross damages of $184,779.06 less her subsequent income of $94,546.28) (doc. # 71: Final Pretrial Order, Sched. B). The jury trial on

---

[1]On January 19, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 18).

plaintiff's FMLA claim lasted three days. On November 15, 2018, in closing arguments, plaintiff's counsel asked the jury to award plaintiff $57,256.70 in net back pay damages through the date of trial (doc. # 107: Trial Tr. at 583:14-18). That same day, the jury returned a verdict in favor of plaintiff and against defendant in the amount of $12,000.00 in lost wages and benefits (doc. # 93).

On February 20, 2019, the Court denied defendant's renewed motion for judgment as a matter of law, granted plaintiff's bill of costs in the reduced amount of $2,410.71, granted plaintiff's motion to add $1,241.09 in prejudgment interest and $13,241.09 in liquidated damages to the jury verdict, and denied plaintiff's motion for equitable damages in the form of front pay (doc. # 100). Thus, as adjusted by these rulings, plaintiff's total monetary award – without considering costs – was $26,482.18.

Now pending is plaintiff's motion for attorneys' fees in the amount of $ 196,348.13 (doc. # 113: Pl.'s Mot. for Attys.' Fees at 2). Defendant has filed a response seeking a reduction in these fees to $85,645.00 (doc. # 127: Def.'s Resp. to Mot. for Attys.' Fees). For the reasons that follow, we award plaintiff $135,215.94 in attorneys' fees.

## I.

The FMLA provides that for a prevailing plaintiff, the court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee." 29 U.S.C. §2617(a)(3). In this Court's Memorandum Opinion and Order on plaintiff's motion for prejudgment interest and liquidated damages, we held that plaintiff was a prevailing party (*see* doc. # 117, at 9-10). Defendant does not dispute here the determination that plaintiff is a prevailing party, and thus is entitled to some award of attorneys' fees.

In determining a reasonable attorney's fee, "[t]he district court first calculates the lodestar, which is the hours reasonably expended multiplied by the reasonable hourly rate—and nothing

else." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017) (internal quotations and citations omitted). "Once the lodestar is calculated, it may be appropriate to adjust it further." *Id.* "A district court is in the best position to make the contextual and fact-specific assessment of what fees are reasonable." *World Outreach Conference Ctr. v. City of Chicago*, 896 F.3d 779, 782 (7th Cir. 2018) (internal citations and quotations omitted).

## II.

Defendant first contends that the hourly rates plaintiff's attorneys seek are not reasonable.

A reasonable hourly rate is based on the local market rate for the attorney's services. The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases. The party seeking a fee award bears the burden of establishing the market rate for the work.

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (internal citations omitted).

Plaintiff seeks hourly rates of $475.00 for Alejandro Caffarelli (the named partner at Caffarelli & Associates Ltd.), $350.00 for attorney, Lorraine T. Peeters (a partner), $325.00 for Madeline Engel (an associate with more than eight years of experience), $300.00 for Alexis D. Martin (an associate with more than four years of experience), $150.00 for Joanna Germann (a paralegal), and $120.00 for Mariela Cano (a paralegal) (Pl.'s Mot., Ex. A). We find that plaintiff has met her burden of showing that the rates requested are reasonable.

*First*, in support of these rates, plaintiff attached invoices showing that at least some of her attorneys' other clients who paid on an hourly-rate basis were charged and paid these rates from April through November 2018 (Pl.'s Mot. at 4, citing Ex. B).[2] This is "[t]he best evidence of the

---

[2] We note a couple of differences in the invoices that do not undermine the reasonableness of the hourly rates plaintiff's attorneys seek. For the other clients, Ms. Peeters was actually billed out at a higher hourly rate -- $375.00 -- than plaintiff seeks here. In addition, Ms. Cano's rates are not indicated in the exhibit. However, as we explain below, her rates do not affect the award of attorneys' fees here.

market rate." *Montanez*, 755 F.3d at 553. *See also Herrera v. Grand Sports Arena, LLC*, No. 17 C 0452, 2018 WL 6511155, at *3 (N.D. Ill. Dec. 11, 2018) (awarding Caffarelli & Associates Ltd. the same hourly rates based on evidence of what other clients paid). Defendant's assertion that plaintiff did not provide evidence of what fee-paying clients paid for her attorneys' work in similar cases (Def.'s Resp. at 3) is plainly wrong.

*Second*, plaintiff has submitted affidavits from two attorneys who attest to the reasonableness of plaintiff's attorneys' hourly rates. The affidavits from J. Bryan Wood and Noelle Brennan state that they each have 20 years or more experience practicing employment law, and their hourly rates are $450.00 and $500.00, respectively (Ex. C: Wood Aff., ¶¶ 11-14 and Brennan Aff., ¶ 8). As Mr. Caffarelli's rate of $475.00 falls within this range, the affidavits further support the reasonableness of the hourly rate he seeks. Defendant contends that the Court should disregard these affidavits because they do not establish that clients have paid the affiants' hourly rates (Def.'s Resp. at 4). However, the Seventh Circuit has cited with approval "affidavits describing what comparable attorneys charge for similar services," such as the affidavits plaintiff attaches here. *Montanez*, 755 F.3d at 554 (comparing them with "conclusory affidavits from attorneys merely opining on the reasonableness of another attorney's fee," which had "little probative value"). In addition, defendant contends that it is not clear from the affidavits that those attorneys have experience similar to that of plaintiff's attorneys (Def.'s Resp. at 4). We disagree. Beyond the attorneys' years of experience, both affidavits provide further details showing comparable skill and experience.[3]

---

[3]Plaintiff also contends that the hourly rates she seeks are consistent with the Laffey Matrix. Defendant disputes the appropriateness of the Laffey Matrix, and courts in this district have viewed the Laffey Matrix "with differing levels of praise and skepticism."*Mouloki v. Epee*, No. 14 C 5532, 2017 WL 2791215, at *4 (N.D. Ill. June 27, 2017) (internal citations and quotations omitted). We do not further address this issue here because, as explained below, the paid invoices and attorneys' affidavits submitted by plaintiff are sufficient to establish the reasonableness of plaintiff's attorneys' rates.

*Third*, defendant makes no attempt to show that the lower rates it proposes are reasonable. Defendant seeks to slash the hourly rates to $300.00 for Mr. Caffarelli, $250.00 for Ms. Engel, $225.00 for Ms. Martin, $275.00 for Ms. Peeters, and $100.00 for both paralegals (Def.'s Resp. at 3). In a footnote, defendant states that these rates were derived from defendant's attorneys' "own hourly billing rate" and "the 2017 legal trends report attached hereto" as Exhibit B (*Id.* at 3 n.1; Def.'s Resp., Ex. B). However, defendant's attorneys do not reveal their own hourly billing rates,[4] and Exhibit B is a copy of a short, unsourced, online article titled "2017 legal trends report delivers the data that law firms need" (*Id.*). This so-called "legal trends report" does not cast doubt on the evidence plaintiff has submitting showing that her attorneys' requested rates are reasonable.[5]

### III.

Defendant also argues that the total time for which plaintiff's attorneys seek compensation is excessive. "The total time should exclude work that was 'excessive, redundant, or otherwise unnecessary.'" *Sommerfield*, 863 F.3d at 650 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The "fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Baker v. Lindgren*, 856 F.3d 498, 503-04 (7th Cir. 2017) (quoting *Hensley*, 461 U.S. at 437).

Plaintiff attached a spreadsheet of the hours her attorneys billed in this case, with a 100 percent discount for the time her attorneys spent associated with the depositions of Paul Kelly and Valerie Norris, preparation of the EEOC charge and communications with the EEOC, and a 50

---

[4]The defendant's failure to provide this comparative information is also a violation of Local Rule 54.3, which provides that the respondent to a motion for attorneys' fees shall furnish "evidence of the hourly rates for all billers paid by respondent during the litigation" if the rates for the movant's attorneys are in dispute. L.R. 54.3(d)(5)(B).

[5]The Court recalls that almost nine years ago, Mr. Caffarelli sought an hourly rate of $340.00, higher than the $300.00 defendant proposes here, and the defendants in that case did not challenge the reasonableness of Mr. Caffarelli's hourly rate. *See Rasic v. City of Northlake*, No. 08 C 0104, 2010 WL 5313774 (N.D. Ill. Dec. 20, 2010).

percent deduction for time attributable to both the Title VII and FMLA claims, such as summary judgment briefing and written discovery (Pl.'s Mot. at 8; Pl.'s Mot., Ex. E). After those deductions, plaintiff seeks payment for 149.875 hours of work performed by Mr. Caffarelli, 3.75 hours of work performed by Ms. Peeters, 333.5 hours of work performed by Ms. Engel, 24.375 hours of work performed by Ms. Martin, 50.875 hours of work performed by Ms. Germann, and 3.5 hours of work performed by Ms. Cano (Pl.'s Mot. at 5). Plaintiff calculates her total attorneys' fees, after the discounts, at $196,348.13 (*Id.*). The Court's calculations yield a slightly lower number: $196,254.375 ($475.00 x 149.875 + $350.00 x 3.75 + $325.00 x 333.5 + $300.00 x 24.375 + $150.00 x 50.875 + $120.00 x 3.5).

Defendant argues that the Court should further reduce plaintiff's total attorneys' fee award because: (1) plaintiff's counsel did not adequately discount for hours worked on their dismissed Title VII claim; (2) plaintiff's counsel's billing was duplicative and excessive; and (3) plaintiff's counsel improperly billed for administrative and clerical tasks (Def.'s Resp. at 5-8). At the above rates, defendant requests that the total fee award be reduced to $126,600.40 (Def.'s Resp., Ex. A, Part 2 at p. 31).

### A.

"We begin our analysis of the defendant[']s claim for a reduction by noting that the [defendant] did not comply with Local Rule 54.3 of the Northern District of Illinois." *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). "Local Rule 54.3 requires a party who opposes a fee petition to produce its own attorneys' time and work records, in order to avoid 'hypocritical objections.'" *Mouloki v. Epee*, No. 14 C 5532, 2018 WL 4868960, at *3 (N.D. Ill. Jan. 10, 2018) (quoting *Farfaras*, 433 F.3d at 569), Report and Recommendation adopted, No. 14 C 5532, 2018 WL 2096376 (N.D. Ill. May 7, 2018). "The purpose of this rule is to prevent a

responding attorney from criticizing the number of hours devoted to the case by counsel for the prevailing party, without having to disclose how many hours the responding attorney spent on the case." *Harris N.A. v. Acadia Invs. L.C.*, No. 09 C 6661, 2012 WL 1681985, at *7 (N.D. Ill. May 14, 2012). "A party opposing a fee petition who fails to provide that information can find itself on weak footing in challenging the amount of time spent by the opponent on the case." *Mouloki*, 2018 WL 4868960, at *3.

Defendant provided no evidence of its attorneys' time records. Instead, in its response brief, defendant purports to give "examples of the kinds of work that Plaintiff's counsel has failed to appropriately assess," pointing the Court to Group Exhibit A, Parts 1 and 2, but does not tie these categories of work to plaintiff's attorneys' specific billing entries (Def.'s Resp. at 6-7). Part 1 is a copy of plaintiff's attorneys' spreadsheet of their time and requested fees along with asterisks by the entries defendant disputes (Def.'s Resp., Ex. A, Part 1). Part 2 is a table defendant created of the asterisked entries, with categories for "Description/Reason Disputed," "Amount to Decrease at Current Rate," and "Amount to Decrease at Revised Rate" (Def.'s Resp., Ex. A, Part 2). The reasons defendant gives for disputing certain entries primarily consist of one or two words – "administrative," "no specificity," "specificity," "duplicative," "Title VII" or "Title VII focused," or "disproportionate hours" (*Id.*).

"It is [defendant's] responsibility, not the Court's, to explain the specific reasons for challenges to any particular time entries." *Harris*, 2012 WL 1681985, at *6 (internal quotations and citations omitted). "[D]efendant['s] submission falls far short of what we would expect from a party challenging the opponent's fee petition under Local Rule 54.3." *Mouloki*, 2018 WL 4868960, at *4. "That said, we will consider each specific challenge defendant[] raise[s] . . . to the extent we are able to readily correlate that challenge to highlighted entries." *Id.*

## B.

*First*, defendant asserts that 119 disputed entries improperly seek compensation for "administrative" tasks; defendant seeks to deduct 100 percent of these fees. "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). These noncompensable tasks include copying documents, assembling filings, electronically filing documents, sending materials, and telephoning court reporters. *Teague v. Miehle*, No. 14 C 6950, 2019 WL 1253985, at *7 (N.D. Ill. Mar. 19, 2019). "On the other hand, time paralegals spent on 'factual investigation, conducting legal research, summarizing depositions, checking citations, compiling statistical and financial data, preparing court documents, serving processes, and discussing the case with attorneys' is 'sufficiently complex to justify the efforts of a paralegal.'" *Id.* (quoting *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006)). In addition, time spent communicating with a client and opposing counsel, obtaining and producing documents, and "time spent preparing service documents or ensuring compliance with local rules" is compensable. *Morjal v. City of Chicago, Ill.*, No. 12 C 185, 2013 WL 2368062, at *2 (N.D. Ill. May 29, 2013).

The majority of entries defendant contends are administrative fall into the latter, compensable categories. These activities include: drafting summons, finalizing motions, drafting notices of depositions, preparing and finalizing exhibits to motions, reviewing motions, preparing confidentiality orders, preparing damages calculations, preparing discovery requests, preparing the pretrial order, corresponding with opposing counsel and the client to schedule depositions, preparing and communicating regarding service of process, producing documents, and training on

8

JERS (the jury evidence recording system to use at trial). However, we find that the following $1,782.50 in fees plaintiff's attorneys seek for work performed by paralegals (and, in one instance, Ms. Engel) constitute non-compensable administrative tasks:

| Date | Professional | Activity | Hours/Fee Deducted |
|------|-------------|----------|-------------------|
| 4/19/2017 | Germann | Convert documents to Word format, calendar due dates | 0.25 hours/$37.50[6] |
| 6/16/17 | Germann | Prepare production and bates label | 1.5 hours/$225.00 |
| 7/27/2017 | Germann | Order transcript of proceedings | 0.25 hours/$37.50 |
| 7/28/2017 | Germann | Correspondence regarding transcript | 0.25 hours/$37.50 |
| 8/9/2017 | Germann | Arrange for court reporter | 0.25 hours/$37.50 |
| 11/1/2017 | Germann | Correspondence with court reporter regarding transcripts | 0.25 hours/$37.50 |
| 11/1/2017 | Germann | Correspondence regarding ordering transcript | 0.5 hours/$81.25 |
| 11/8/2017 | Germann | Correspondence with court reporter | 0.25 hours/$37.50 |
| 10/5/2018 | Germann | Correspondence regarding setting up JERS training | 0.25 hours/$37.50 |
| 10/9/2018 | Germann | Correspondence regarding setting up JERS training | 0.25 hours/$37.50 |
| 10/9/2018 | Germann | Convert jury instructions to Word | 0.25 hours/$37.50 |
| 10/12/2018 | Engel | Correspondence regarding scheduling JERS training | 0.25 hours/$81.25 |
| 10/16/2018 | Germann | Correspondence regarding setting up JERS training | 0.5 hours/$75.00 |
| 11/2/2018 | Germann | Format jury instructions | 1.5 hours/$225.00 |
| 11/4/2018 | Cano | Prepare trial binder for judge and deliver to chambers | 1.0 hour/$120.00 |
| 11/5/2018 | Germann | Prepare copies for court | 0.75 hours/$112.50 |
| 11/7/2018 | Germann | Attempts to communicate with courtroom technology | 0.75 hours/$112.50 |
| 11/7/2018 | Cano | Print and prepare binders | 2.5 hours/$300.00 |
| 11/9/2018 | Germann | Attempts to communicate with courtroom technology | 0.75 hours/$112.50 |

## C.

*Second*, defendant disputes 106 billing entries that defendant contends relate to or focus on the Title VII claim, or the EEOC charge underlying it. Defendant contends the discounts plaintiff

---

[6]Although defendant seeks to subtract the full half-hour Ms. Germann spent on this task, plaintiff already discounted Ms. Germann's time by half in this instance.

applied to this work did not go far enough. Instead of a 50 percent deduction for time attributable to both the Title VII and FMLA claims, defendant seeks a 100 percent or 90 percent reduction in these entries (Def.'s Resp., Ex. A, Part 2). Defendant also appears to dispute plaintiff's contention that she discounted all the time her attorneys spent associated with the depositions of Mr. Kelly and Ms. Norris, preparation of the EEOC charge and communications with the EEOC (*Id.*).

We find that the 50 percent discount plaintiff's attorneys applied to time attributable to both the Title VII and FMLA claims was reasonable. Before the Court granted summary judgment on the Title VII claim, plaintiff had to respond to a motion to dismiss and conduct discovery on both claims. There is no evidence that plaintiff spent more time on one or the other claim beyond the work for which plaintiff has already taken a 100 percent deduction. Nor, as explained above, has defendant supported its assertion by disclosing how much time its attorneys spent on the Title VII claim *vis a vis* the FMLA claim. In addition, we see no evidence that plaintiff did not discount her attorneys' time as she represented. "Where, as here, defendant[] fail[s] to provide a principled basis to reduce time entries that allegedly are excessive, we will not engage in an arbitrary determination of how long a reasonable attorney would spend on certain tasks." *Ingram v. World Sec. Bureau, Inc.*, No. 11 C 6566, 2013 WL 6664782, at *4 (N.D. Ill. Dec. 17, 2013) (internal citations and quotations omitted).

### D.

*Third*, defendant contends that 22 of plaintiff's attorneys' billing entries are "duplicative" or "disproportionate" and should be deducted (Def.'s Resp., Ex. A, Part 2). As explained above, "[t]he total time should exclude work that was excessive, redundant, or otherwise unnecessary." *Sommerfield*, 863 F.3d at 650 (internal quotations and citations omitted).

In one of defendant's few specific objections to plaintiff's attorneys' billing entries, defendant objected to a telephone conference conducted by Ms. Peeters to discuss trial strategy as "disproportionate based on apparent involvement in this case" (Def.'s Resp., Ex. A, Part 2, at 29). We agree, and find that this same objection applies to the entire 3.75 hours of Ms. Peeters' time for which plaintiff seeks compensation. "[W]hether a party's counsel is guilty of staffing overkill depends on the circumstances, including the complexity of the case and the length of the litigation." *Stragapede v. City of Evanston*, 215 F. Supp. 3d 708, 711 (N.D. Ill. 2016). This case was neither long nor complex: it lasted two years from filing to trial, involved only one plaintiff and one defendant, and had its original two claims reduced to one claim on summary judgment. With Mr. Caffarelli billing almost 150 hours and Ms. Engel, a senior associate, billing more than 300 hours, we find that the 3.75 hours billed by Ms. Peeters -- a partner -- on strategy, research, and reviewing and revising a legal brief were not reasonably spent. Accordingly, we deduct these hours from plaintiff's attorneys' total fees, resulting in a deduction of $1,312.50 (3.75 x $350.00).

However, we disagree with defendant that other entries are duplicative or disproportionate. The entries defendant disputes on these grounds primarily consist of drafting, reviewing and revising court filings. However, defendant does not support its assertion of disproportionality with any evidence of the amount of time its attorneys spent on similar tasks, and therefore, defendant does not provide a "useful measuring stick by which to assess the reasonableness of the time plaintiff's attorneys spent on the case." *Mouloki*, 2018 WL 4868960, at *3. Accordingly, we disregard defendant's remaining objections on these grounds.

### E.

*Fourth*, defendant contends that nine of plaintiff's attorneys' billing entries should be deducted for lack of "specificity" (Def.'s Resp., Ex. A, Part 2). It is well-settled that the Court may

reduce the hours calculation "[w]here the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433. Here, however, we disagree that the entries disputed by defendant -- such as review and revise complaint and related material and correspondence with client regarding status of the case -- lack adequate specificity. We decline to further discount these charges.

### F.

*Fifth*, defendant seeks to deduct 90 to 100 percent of five billing entries without any explanation beyond citing to a string of cases (*See* Def.'s Resp., Ex. A, Part 2, at pp. 1, 4, 6). "Objectors to fee petitions should not shift 'to the court . . . the objector's responsibility . . . to meaningfully explain why each item claimed to be unreasonable or otherwise noncompensable should be disallowed.'" *Nichols v. Ill. Dep't of Transp.*, No. 12 C 1789, 2019 WL 157915, at *6 (N.D. Ill. Jan. 10, 2019) (quoting *Bd. of Trs. of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chi. & Vicinity v. Allison Enters., Inc.*, 12 C 4097, 2016 WL 4397972, at *5 (N.D. Ill. Aug. 18, 2016)). We decline to alter these billing entries for which defendant did not adequately object.

Deducting Ms. Peeters' time and the time spent on administrative tasks as set forth above, plaintiff's legal team reasonably expended hours as follows: 149.875 by Mr. Caffarelli, 333.25 by Ms. Engel, 24.375 by Ms. Martin, and 42.375 by Ms. Germann.

### IV.

Multiplying the hours reasonably expended multiplied by the reasonable hourly rate yields a lodestar of $193,165.63 ($475.00 x 149.875 + $325.00 x 333.25 + $300.00 x 24.375 + $150.00 x 42.375).

| Professional | Hours Reasonably Expended | Reasonable Rate |
|---|---|---|
| Caffarelli | 149.875 | $475.00 |
| Peeters | 0 | $350.00 |
| Engel | 333.25 | $325.00 |

| Martin | 24.375 | $300.00 |
| Germann | 42.375 | $150.00 |
| Cano | 0 | $120.00 |

The lodestar is a "presumptively reasonable fee." *World Outreach*, 896 F.3d at 783.

However, if a "plaintiff has achieved only partial or limited success, the product of hours

reasonably expended on the litigation as a whole times a reasonable hourly rate may be an

excessive amount. This will be true even where the plaintiff's claims were interrelated,

nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. "[T]he most critical factor is the

degree of success obtained," *Id.*, "particularly when a plaintiff is deemed 'prevailing' even though

he succeeded on only some of his claims for relief." *World Outreach*, 896 F.3d at 783 (internal

quotations and citations omitted). The trial court judge has discretion to make this adjustment to

the lodestar. *Id.*

Although Ms. Valdivia prevailed at trial, we find that the lodestar amount, $193,165.625,

is not reasonable based on the limited success she obtained. In closing arguments, plaintiff's

counsel asked the jury to award plaintiff $57,256.70 in net back pay damages, but the jury awarded

her only $12,000.00, less than 21 percent of what plaintiff sought at trial – and only 13 percent of

the $90,232.78 she claimed in the final pretrial order.[7] "Given [plaintiff's] demands throughout,

[her] ultimate damages award could hardly be characterized as an excellent result." *World

Outreach*, 896 F.3d at 783.

"'No algorithm is available' for adjusting a lodestar to reflect partial or limited success."

*Montanez*, 755 F.3d at 557 (quoting *Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir.

2014)). However, the Court may consider proportionality between damages and attorney's fees

---

[7]It does not help plaintiff to include the liquidated damages to her recovery. That would bring her trial recovery of backpay and liquidated damages to $24,000.00, but in the final pretrial order, she claimed $180,465.56 in backpay and liquidated damages (doc. # 71: Final Pretrial Order at 9-10). So, her recovery still would be only 13 percent of what she claimed in the final pretrial order.

"as one factor in determining a reasonable fee." *Sommerfield*, 863 F.3d at 651. In addition, the Court may consider whether the attorneys' expenditure of time could "be explained by the complexity of the facts or the relevant legal doctrine, or by the vindication of an important public interest," or whether the plaintiff "unrealistically believed [her] claims were worth far more than [she] recovered." *Montanez*, 755 F.3d at 557.

In *Montanez*, the Seventh Circuit affirmed the district judge's decision to cut the lodestar in half to reflect the plaintiff's limited success, where the plaintiff "did not get all that he asked for—far from it." *Montanez*, 755 F.3d at 556-57. In that case, the appeals court found that the final fee award of $108,350.87 (one-half the lodestar amount) was quite "generous in relation to" the plaintiff's $2,000.00 verdict. *Id.* In *Richardson*, the Seventh Circuit similarly found the district judge's decision to award $123,000.00 -- approximately 18 percent of the attorneys' fees plaintiff requested -- was "generous" where the jury gave the plaintiff only 1.5 percent of what he sought at trial. *Richardson*, 740 F.3d at 1103. *See also Baker*, 856 F.3d at 504 (affirming fee award of $164,395.00 that "halved the lodestar to reflect [the plaintiff's] limited success," where the plaintiff prevailed on two of his six claims and recovered a total of $30,000.00); *Sommerfield*, 863 F.3d at 651 (holding that the magistrate judge's 50 percent reduction in the lodestar amount – to $430,000.00 -- was "entirely appropriate" where the attorney spent over a decade on the case and netted his client $30,000.00); *World Outreach*, 896 F.3d at 783 (upholding the trial court's 70 percent across-the-board reduction to the lodestar where the plaintiff's attorneys "never had a realistic valuation of the case" and the parties might have settled earlier if the plaintiff had been more concerned with resolving the case).

Here, we find that a 30 percent reduction in the lodestar amount appropriately reflects plaintiff's limited success. As late as August 2018, in the final pretrial order, plaintiff valued her

case at \$90,232.78. At the close of evidence at trial three months later, however, plaintiff valued her case at only \$57,256.70. Yet, the jury awarded plaintiff only \$12,000.00, less than 21 percent of her request at trial. The \$193,165.63 lodestar is not only disproportionate to the \$12,000.00 damages award, but it also reflects that plaintiff had an inflated view of the value of her case.

However, more than a 30 percent reduction would ignore the role defendant played in extending the life and the legal fees in this case. Defendant has repeatedly refused throughout the pendency of this case to engage in any settlement discussions with plaintiff. In addition, while the relevant legal doctrine is not particularly complex, defendant raised multiple substantive issues – sometimes repeatedly, despite this Court's previous rulings – in the motions they filed in this case.[8] Thus, taking into account all of the relevant factors, we find that a 30 percent reduction in the lodestar is appropriate, resulting in a total award of attorneys' fees to plaintiff in the amount of \$135,215.94 (0.7 x \$193,165.63).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part plaintiff's motion for attorneys' fees (doc. # 113). The Court awards plaintiff \$135,215.94 in attorneys' fees.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: May 20, 2019

---

[8]For example, in the memorandum opinion and order on defendant's motion to dismiss, this Court held that "the fact that Ms. Valdivia herself did not know of her medical condition at the time of her resignation is not fatal to her FMLA claim." *Valdivia v. Twp. High Sch. Dist. 214*, No. 16 C 10333, 2017 WL 2114965, at *5 (N.D. Ill. May 15, 2017) (citing *Burnett v. LFW, Inc.*, 472 F.3d 471, 479 (7th Cir. 2006); *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 382 (7th Cir. 2003)). However, in its memorandum in support of its motion for summary judgment, defendant called the fact that an employer may have notice of a serious medical condition even if the employee herself was unaware to be "absurd" (doc. # 59, at 10-11).